54 CCPA

**Application of Wilfred Roland SOUCY.**

**Patent Appeal No. 7793.**

United States Court of Customs
and Patent Appeals.

June 8, 1967.

Rehearing Denied Oct. 5, 1967.

Kane, Dalsimer, Kane & Smith, Joseph C. Sullivan, New York City, for appellant.

Joseph Schimmel, Washington, D. C. (Jere Sears, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH and ALMOND, Judges.

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Appeals affirming the examiner's rejection of claims 1–4 and 15–19 in appellant's application,[1] entitled "Automatic Valvular Closure," as unpatentable in view of certain prior art.

The application relates to sealing means for collapsible, fluid-containing squeeze containers. In general, an elastically elongatable tie member is employed to bias separable lip portions of the egress of the container into normally sealed engagement. The container may be opened to discharge its contents by applying sufficient force to the contents to cause elongation of the tie. Release of the pressure on the container contents removes the tie elongating force, allows the elastic tie to recover its original dimension, and automatically results in reclosure of the exit wall. Claim 15 is representative:

> 15. In an automatic valvular closure having two egress walls relatively movable to a closed condition; elastically elongatable tie means mounted in operative association with said egress walls and adapted to yieldably maintain said egress walls united along their effective width; whereby said tie means elongatingly yields when said egress walls undergo relative movement from said closed condition, and said tie means elastically shortens when said egress walls undergo relative movement toward said closed condition.

---

1. Serial No. 206,118, filed June 20, 1962.

Appellant discloses and claims various shapes of elastically elongatable tie members, as well as ways in which the tie may be mounted "in operative associa-tion" with the egress walls of the squeeze tube. Thus the mated sides of the egress wall may be laced together with elasti-cally elongatable stitching (Fig. 3), the

FIG. 3

FIG. 5

FIG. 13

FIG. 14

subject of allowed claim 5. The tie may also consist of headed elastic filaments which are passed through the mating sides of the egress walls (Fig. 5), or an elastic band 18 surrounding the egress walls (Figs. 13 and 14).

The references are:

Browne      2,446,571   August 10, 1948.
Marks Mechanical Engineers' Handbook, 1958, McGraw-Hill Book Co., Inc., New York, 6th Edition, Sec. 5–35.

The examiner rejected the claims "as unpatentable over Browne under 35 U.S. C. 102." It was his position that the claims "read directly" on that reference since "the spring means [element 20 in Fig. 3] in Brown are of elastic material

and are elastically elongatable within generally accepted engineering terms," thus providing an elastically elongatable tie member within the terms of the claims. Though cognizant of the fact

that Browne's spring means operates by flexure and not tensile force, the board agreed with the examiner, noting that

* * * the Marks' Handbook citation establishes that a metallic element when flexed, as in the case of the Browne springs undergoes an "elastic elongation" on one side of the neutral plane and an elastic shortening on the other side of that plane. * * * The claim language does not require the *whole* cross section of the tie member to elongate or yield or that the elonga-tion be produced by a *direct* applica-tion of a tensile force as distinguished from a tensile force *indirectly* result-ing from a flexing of the tie member.

* * *

We do not agree that Browne anticipates the claims under 35 U.S.C. § 102. As appellant points out, the exam-iner and board appear to have overlooked the definition of "elastically elongatable" appellant provides in his specification which governs the meaning of that term employed in his claims:

In this application the elastic mem-ber is considered and is frequently re-ferred to as a tie which is elastically elongatable. The term "elongatable" is intended to mean ability to lengthen in the spatial sense *directly by tensile deformation,* of the tie material, *sub-stantially throughout* the effective working area of, and at said area, in

the direction of lines intersecting the plane of, an imaginary cross-section of the tie—all as understood in that branch of mechanics which treats of the resistance of materials. (Emphasis supplied.)

The record, particularly the specification, does not reasonably support the broad interpretation given the claims by the examiner and board, and under the circumstances the rejection of those claims under 35 U.S.C. § 102 must be reversed.

The board, however, also felt the claimed subject matter to be obvious in view of Browne under 35 U.S.C. § 103, stating:

> \* \* \* In Browne, Figures 1 and 3, a spring 20 interlocks in a groove of the molded body, and completely encircles the egress opening. That a rubber band would be an obvious alternative to the metal spring wire is evident from the common practice of closing the neck of a flexible container by a rubber band, as in the case of a child's rubber balloon, of which we take judicial notice. \* \* \*

Although appellant urges that the board erred in taking judicial notice of "the common practice of closing the neck of a flexible container by a rubber band, as in the case of a child's rubber balloon," his arguments are not convincing. While true it is, as appellant contends, that "the rubber band holds the neck of the balloon closed only by distorting the balloon neck itself," appellant's use of an elastic band, illustrated in Figs. 13 and 14 above, does not appear to produce a dissimilar result. It seems to us that a rubber band would be an obvious alternative to the spring means of Browne to effect a resilient closure. We are satisfied the decision of the board is without reversible error insofar as the rejection of claims 1–3, 15, 16, 18 and 19 is concerned.

With respect to claims 4 and 17, however, which call for an "elastically elongatable filament \* \* \* passing *through* the mated sides" of the egress wall and an "elastically elongatable tie *lacing* said egress walls together," much in the manner of stitching or shoe lacings, we find nothing in the references which suggests such a combination.

The decision is affirmed as to claims 1–3, 15, 16, 18 and 19 and reversed as to claims 4 and 17.

Modified.